**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO.  09-02048 |
| | Chapter   11 |
| PMC MARKETING CORP | |
| Debtor(s) | |
| | **FILED & ENTERED ON 09/04/2013** |

**OPINION & ORDER**

Before this court is Creditor's Motion for Prepetition Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(9) [Dkt. No. 1164]; Trustee's Opposition to Creditor's Motion for Prepetition Administrative Expenses [Dkt. No. 1171]; and Creditor's Reply to Trustee's Opposition [Dkt. No. 1175]. For the reasons set forth below, Creditor's Motion for Prepetition Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(9) is DENIED.

**I. Factual Background**

Debtor, PMC Marketing Corporation, filed a voluntary Chapter 11 bankruptcy case on March 18, 2009. Debtor's Chapter 11 bankruptcy case was converted to Chapter 7 on May 21, 2010. Noreen Wiscovitch Rentas was appointed as the Chapter 7 trustee on the same day. Subsequently, creditor P.R. Electric Power Authority ("PREPA") filed a Motion for Prepetition Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(9).

In the Motion presently before the Court, PREPA argues that it is entitled to prepetition administrative expenses. PREPA points out that during the twenty (20) days before the date of the commencement of Debtor's bankruptcy case, the period of February 26 to March 17, 2009, Debtor received from PREPA electricity sold by PREPA to Debtor in the ordinary course of Debtor's business. The services amounted to a total value of $154,023.52 and at least $89,336.42 from the

total value remains unpaid by Debtor. PREPA contends that the difference between the two amounts is the result of the application of the payments made by Debtor's prepetition surety pursuant to the prepetition bond issued by said security to jointly guarantee payment by Debtor of its obligations to PREPA. PREPA further argues that the electricity supplied by PREPA to Debtor is moveable and was identifiable at the time that it passed through Debtor's meters. PREPA argues that pursuant to 11 U.S.C. § 503(b)(9), "After notice and a hearing, there shall be allowed, administrative expenses… [for] the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."  Citing In re Grede Foundries, Inc., 435 B.R. 593, 595 (Bkrtcy.W.D. Wis. 2010).

PREPA further points out that when courts are determining if a thing is a "good" for purposes of section 503(b)(9), courts apply the definition of "good" from the Uniform Commercial Code (the "UCC"). Therefore, because the UCC defines "goods" as "all things that are moveable at the time of identification to a contract for sale," electricity is a "good" under the UCC definition of such term. Further, because electricity is identifiable to the consumer's contract at the time it is metered at the consumer's place and is moveable at the time that it is metered and afterwards, a utility that provides electricity to a debtor during the twenty days before the commencement of debtor's bankruptcy case is entitled to administrative expense priority for the invoiced amount. Summarily, since PREPA supplied electricity to Debtor, in the Debtor's ordinary course of business, during the twenty (20) day period prior to the commencement of Debtor's bankruptcy case on March 18, 2009, PREPA is

2

entitled to an administrative expense claim for the value of that electricity that remains unpaid pursuant to 11 U.S.C. § 503(b)(9) in the amount of $89,336.42.

In opposition, Trustee argues that PREPA's Motion is actually a belated proof of claim in "disguise," which cannot be filed three years after the deadline set by this Court. Pursuant to Fed.R.Bankr.P., Rule 3003, the Court can set the deadlines to file proof of claims pursuant to § 501 of the Bankruptcy Code. Under the then active Local Rule 3003-1, "Proofs of claim in Chapter 11 cases must be filed: (a) on or before ninety (90) days from the date first set for the § 341 meeting of creditors; and, (b) for governmental units, within one hundred and eighty (180) days after the date of the order for relief, unless otherwise ordered by the court." Trustee further points out that there were three opportunities to file a proof of claim yet PREPA failed to do so. These three instances were:

(1) The first deadline was established by a "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines" sent by the Court on March 20, 2009. Pursuant to said Notice, the bar dates were set as July 27, 2009 for regular creditors and September 16, 2009 for governmental units. See Dkt. 8. This Court gave notice of said bar dates to all creditors and parties in this case, including PREPA, on March 22, 2009. See Certificate of Service at Dkt. 9.

(2) The second deadline was established by an Order entered by this Court on February 19, 2010. Dkt. 588/ 663. In such Order, this Court stated that "[t]he cut-off date for administrative claims is 4/20/2010." See Dkt. 588 - p. 3, ¶11; Dkt. 663 - p. 3, ¶11. This Court gave notice of said bar dates to all creditors and parties in this case, including the Movant who was notified through CM/ECF on February 19, 2010, and March 26, 2010 through its counsel and twice by mail. See Certificate of Service at Dkt. 666.

(3) The third deadline that established the filing of proof of claims was notified when the case was converted to Chapter 7. The new bar dates were set as September 28, 2010 for regular creditors, and November 17, 2010 for governmental units. See Dkt. 866. The Court gave notice of said bar dates to all creditors and parties in this case, including the Movant who was notified through CM/ECF on May 21, 2010 through its counsel and twice by mail. See Certificate of Service at Dkt. 873.

3

Trustee contends that because PREPA had ample opportunities to file this instant claim, and PREPA on several occasions filed other similar claims, PREPA should be barred from filing this particular claim. Trustee points out several instances to which PREPA had filed such similar claims: (1) PREPA filed a regular proof of claim in this case on July 7, 2009. See Claim 94-1. PREPA later amended its claim on January 20, 2010. See Claim 94-2. (2) PREPA also filed a "Motion for Allowance of Administrative Claim" on March 29, 2010 in response to this Court's Order of February 19, 2010 [Dkt. No. 668]. The court granted PREPA's Motion for Allowance of Administrative Claim on April 15, 2010 [Dkt. No. 710]. That Motion filed on March 29, 2010 [Dkt. No. 668] makes no mention of this new requested administrative claim. Trustee further points out that although Fed.R.Bankr.P., Rule 3003(c)(3) and § 503(a) provide that the court may extend the time within which proofs of claim or interest may be filed, this extension must be based on "cause shown" such as excusable neglect. Trustee argues that PREPA has failed to show excusable neglect because PREPA received the notice of the filing of the case along with all creditors. Conclusively, the Trustee asks the court to deny PREPA's Motion for Prepetition Administrative Expenses Pursuant to 11 U.S.C. §503(b)(9) as a belated proof of claim. The Trustee also contends that PREPA did not check the required box for a § 503(b)(9) claim in the proof of claim form, another reason to deny the claim.

In response to the Trustee's Opposition, PREPA argues that its Motion is not a proof of claim but instead is an administrative expense priority for the value of the electricity received by Debtor during the twenty (20) day period prior to the date of Debtor's bankruptcy petition pursuant to 11 U.S.C. § 503(b)(9). PREPA further argues that its administrative expense claim is not delayed

because it is not filing a proof of claim. Regardless, PREPA argues that it did timely file a proof of claim covering the amounts for which PREPA now seeks administrative expense priority under Claims number 94-1 and 94-2. PREPA also points out that when this Court set April 20, 2010 as the bar date for filing administrative expense claims in Debtor's chapter 11 case, this deadline referenced only four agenda items. More specifically, the following: (1) Debtor's Motions to assume certain executory contracts and/or unexpired leases and the related motions; (2) the Application for Compensation by the Secretary of the Unsecured Creditor's Committee; (3) any remaining matter or objection to Debtor's Motion to Assume Certain other Leases; and (4) Scriptpro Caribbean, Inc.'s Motion for Allowance of Administrative Expenses. PREPA further argues that April 20, 2010, cannot be the bar date for filing all administrative expenses in Debtor's chapter 11 case because Debtor's case continued until May 20, 2010, when the case was converted to chapter 7. Therefore, all expenses accrued by Debtor between April 20 and May 19, 2010 that comply with the requirements of 11 U.S.C. § 503(b) would be entitled to administrative expense priority because these creditors could not have been expected to file their claims on or before April 20, 2010.

Even assuming *arguendo* that the court set April 20, 2010 as the bar date for filing all administrative expense claims and that the statement contained in the Minutes of the February 19, 2010 hearing is sufficient and adequate notice of said bar date, PREPA contends that its administrative expense claim at issue did not arise in Debtor's chapter 11 case but rather when Debtor's bankruptcy case was converted from chapter 11 to chapter 7. Therefore, PREPA was entitled to file its administrative expense claim in Debtor's chapter 7 case because pursuant to Fed. R. Bankr. P. 1019(3), all claims timely filed in Debtor's chapter 11 case were deemed filed in

Debtor's chapter 7 case. Summarily, because PREPA did not have to file a new proof of claim in Debtor's chapter 7 case, PREPA contends that it had timely filed a proof of claim during Debtor's chapter 11 case and thus this instant proof of claim was deemed filed in Debtor's chapter 7 case. PREPA further contends that it could not have checked the box for a § 503(b)(9) claim since it was non-existent on any versions of the B-10 forms available at the time of the filing was made.

**II. Discussion and Analysis**

After reviewing the arguments raised by the parties and the relevant law, the court finds that, in the context of this current inquiry, the electricity provided by PREPA is a "service" and thus does not fall under 11 U.S.C. § 503(b)(9). As such, PREPA is not entitled to a prepetition expense.

Although the Trustee focuses her rebuttal on section 501 and Rule 3003, the weight of this matter and the relevant ensuing analysis falls squarely on section 503. An examination of the docket of this case reveals that PREPA did timely file a proof of claim covering the amounts for which PREPA now seeks administrative expense priority in Claim number 94-1 and 94-2. Moreover, as PREPA points out, 11 U.S.C. § 503(b)(9) does not mandate a filing deadline.

Section 503(b)(9), which was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), allows creditors to receive priority claims for the value of goods received by a debtor in the ordinary course of the debtor's business within the twenty (20) days preceding the commencement of the bankruptcy case. 11 U.S.C. § 503(b)(9). Thus, to qualify for administrative priority treatment, a claim must be: (1) for goods, (2) that are received by the debtor within the twenty (20) days prior to the bankruptcy filing, and (3) that are sold to the debtor in the ordinary course of its business. It is well settled that only "goods" are eligible for this

6

priority treatment, not "services."[1] In this instant case, there is no dispute that PREPA provided electricity to Debtor within the twenty (20) day period preceding the bankruptcy filing, and that the Debtor purchased that electricity in the ordinary course of its business. Thus, the only issue is whether the electricity provided by PREPA falls within the definition of "goods" for purposes of section 503(b)(9).

A bankruptcy court in this Circuit has reviewed this issue in a different context in In re Erving Indus., Inc., 432 B.R. 354, 365 (Bankr. D. Mass. 2010). Using the "goods" definition under Section 2-105(1) of the UCC, Judge Boroff found electricity is a "good" because of its movability at the time of identification of the contract between Debtor and the electric provider company. Id. at 366-267. In reaching such decision, the electric provider in that case argued that its "service" was different from the traditional "service" functions commonly associated with electric utilities. In describing its "service" while contrasting a traditional "service," the electric company claimed that it: "…differentiates between the delivery of electricity as a service and the sale of electricity as the sale of goods. While regulated utilities are still responsible for the ultimate delivery of electricity to customers, [that the energy company] has no role in that delivery and is involved solely in the sale of electricity as a "competitive supplier." Id. at 358.

---

[1] See In re Grede Foundries, Inc., No. 09-14337, 2010 Bankr. LEXIS 1823 (Bankr. W.D. Wisc. Jun. 1, 2010); In re Circuit City Stores, Inc., 416 B.R. 531, 535 (Bankr. E.D. Va. 2009) ("Consistent with the plain language of the statute, allowed administrative expenses under § 503(b)(9) should only be for claims arising from the sale and delivery of goods to the Debtors, not from the provision of services"); Brown & Cole Stores, LLC v. Associated Grocers, Inc. (In re Brown & Cole Stores, LLC), 375 B.R. 873, 878 (B.A.P. 9th Cir. 2007) ("By the plain terms of the statute, a vendor's right to assert an administrative claim is limited [in that] the vendor must have provided goods (not services)."); In re Goody's Family Clothing, Inc., 401 B.R. 131, 135 (Bankr. D. Del. 2009) ("[B]ased upon the distinction between 'goods' and 'services' throughout in the Bankruptcy Code, a claim for an administrative expense under § 503(b)(9) cannot be a claim for services provided."); In re Samaritan Alliance, LLC, No. 07-50735, 2008 Bankr. LEXIS 1830, at *6-7 (Bankr. E.D. Ky. Jun. 20, 2008) (finding § 503(b)(9) inapplicable because claimant provided what was "more properly characterized as a 'service'").

Further, the electric company stated that it is not a utility provider because it was not listed under the chart of electric utility providers maintained by the Commonwealth of Massachusetts and that it is not a traditional provider of utilities because "it does not have a monopoly or exclusive service or franchise area, is not regulated by the government, and is subject to competition from a number of available alternative sources of electricity." Id. Other courts have agreed with Judge Boroff in holding that electricity is a "good." Enron Power Marketing, Inc. v. Nevada Power Co., 2004 WL 2290486, *2 (S.D.N.Y. Oct.12, 2004) (applying UCC Article 2 to sale of electricity); In re Pacific Gas & Electric Co., 271 B.R. 626, 640 (N.D.Cal.2002) (electricity is "good" under UCC); GFI Wisconsin, Inc. v. Reedsburg Util. Comm'n, 440 B.R. 791, 800 (W.D. Wis. 2010) (holding that electricity is movable, tangible and consumable, that it has physical properties, that it is bought and sold in the marketplace and thus, that it qualifies as a "good" for purposes of the UCC and the Bankruptcy Code.)

Many courts however disagree with Judge Boroff's holding that electricity is a "service" rather than a "good." In re Samaritan Alliance, LLC, 2008 WL 2520107, *3, 2008 Bankr.LEXIS 1830, *9 (Bankr.E.D.Ky. June 20, 2008) (sale of electricity is more akin to providing a "service" than selling "goods.");United States v. Con. Edison Co., 590 F.Supp. 266, 269 (S.D.N.Y.1984) (Under New York law, electricity does not fall under the heading of "goods"); Farina v. Niagara Mohawk Power Corp., 81 A.D.2d 700, 438 N.Y.S.2d 645 (N.Y.App.Div.3d Dep't 1981). A number of courts also have held that electricity does not fall within the UCC's definition of "goods." See e.g., In re Pilgrim's Pride Corp., 421 B.R. 231, 239 (Bankr. N.D. Tex. 2009) ("UCC requires that "goods" be movable at the time of identification. This is simply not true of electricity. Once electricity has been

"identified" by measurement at the meter, it has already been consumed by the end user. It is impossible for the consumer to return electricity to the provider after it has passed the meter point. The mere fact that electricity is sold in metered quantities does not bring it within UCC § 2–105 or Code § 503(b)(9)."); See generally New Balance Ath. Shoe v. Boston Edison Co., 1996 WL 406673 (Mass.Super.Ct.1996); Williams v. Detroit Edison Co., 63 Mich.App. 559, 563, 234 N.W.2d 702 (Mich.Ct.App.1975); Buckeye Union Fire Ins. Co. v. Detroit Edison Co., 38 Mich.App. 325, 196 N.W.2d 316, 317 (1972); Cincinnati Gas & Elec. Co. v. Goebel, 28 Ohio Misc. 2d 4, 5, 502 N.E.2d 713 (Ohio Mun.1986).

*Per contra*, this Court believes that in deciding the question whether electricity is a "good" or a "service" under the Bankruptcy Code, a court must carry out an inquiry into the unique facts of each case and thus this analysis cannot be determined without taking into consideration the totality of circumstances of all the relevant facts. In this instant case, PREPA plays a different role than the alternative energy provider in Erving. Contrary to PREPA, the alternative energy provider in Erving is exactly that, an *alternative* energy provider, in which the consumer can elect such alternative energy from a private corporation. This Court takes judicial notice of PREPA's webpage.[2] Under the "PREPA is" tab, PREPA provided the following description in relevant part:

> The Puerto Rico Electric Power Authority (PREPA) is a **public corporation** that was founded in 1941. Our Mission is to provide electric energy services to customers in the most efficient, cost-effective and reliable manner in harmony with the environment. Our Vision is to ensure that PREPA's operations are competitive to similar corporations around the world. **PREPA produces, transmits and distributes, practically, _all_ the electric power used in Puerto Rico**. It is one of the major public electric power corporations in the United States. **PREPA is directed by a Government Board, comprised of nine members. Seven of its members are appointed by the Governor of Puerto Rico with the approval of the Senate**.

---

[2] www.aeepr.com. Accessed August 23, 2013.

9

(emphasis added).

As seen above, PREPA is a government agency, seeking to provide utilities to the residents of Puerto Rico. Both the House Judiciary Report and the Senate Report on the provision provide in relevant part:

> [Section 366] gives debtors protection from a cut-off of service by a utility because of the filing of a bankruptcy case. This section is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility.
>
> H.R. Rep. No. 95-595, at 350 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6306; S. Rep. No. 95-989, at 60 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5846.

The term "utility" is not defined in the Bankruptcy Code, but its ordinary meaning is "a service (such as light, power, or water) provided by a public utility." Merriam-Webster's Collegiate Dictionary, (10th ed. 2001). The term "public utility" is defined as "a business organization (as an electric company) performing a public service and subject to special governmental regulation." Id. Further guidance is provided by the legislative history of the provision. See Darby v. Time Warner Cable, Inc. (In re Darby), 470 F.3d 573, 574 (5th Cir. 2006). Some courts, after reviewing this legislative history, have concluded that the term "utility" ordinarily refers to a "business organization (as an electric company) performing a public service and subject to special governmental regulations," that has "some special position with respect to the debtor," and has a "monopoly in the area so that the debtor cannot easily obtain comparable service from another." One Stop Realtour Place, Inc. v. Allegiance Telecom, Inc. (In re One Stop Realtour Place, Inc.), 268 B.R. 430, 435 (Bankr. E.D. Pa. 2001). Under this definition, PREPA is a utility provider because: (1) it is subject to governmental

10

regulation as are traditional utilities; (2) PREPA does fit the ordinary definition of a utility as it does enjoy a "special relationship" with the Debtor (PREPA is the sole provider of electricity in Puerto Rico) and it does have a monopoly; and (3) PREPA is a government owned corporation of Puerto Rico.

## III. Conclusion

This Court realizes that the Trustee raised other issues in her Reply, however, this Court, for judicial economy purposes, will not delve unnecessarily into these issues not relevant to the pertinent inquiry. Regardless, because PREPA provided a "service" rather than a "good" to Debtor, PREPA is not entitled to prepetition priority expenses pursuant to 11 U.S.C. § 503(b)(9).

WHEREFORE, Creditor's Motion for Prepetition Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(9) is DENIED.

SO ORDERED

San Juan, Puerto Rico, this 4th day of September, 2013.

Brian K. Tester
U.S. Bankruptcy Judge

11