Case: 13-060 Document: 13 Page: 1 Date Filed: 09/23/2014 Entry ID: 2176606

**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT

———————————————

**BAP NO. PR 13-050**

———————————————

**Bankruptcy Case No. 09-02048-BKT**

———————————————

**PMC MARKETING CORP.,**
a/k/a Farmacias El Amal,
a/k/a COD Drugs,
Debtor.

———————————————

**PUERTO RICO ELECTRIC POWER AUTHORITY,**
Appellant,

v.

**NOREEN WISCOVITCH RENTAS, Chapter 7 Trustee,**
Appellee.

———————————————

**Before**
**Hillman, Hoffman, and Finkle,**
United States Bankruptcy Appellate Panel Judges.

———————————————

**Eduardo J. Corretjer Reyes, Esq., on brief for Appellant.**
**Rafael A. González Valiente, Esq., on brief for Appellee.**

———————————————

**September 23, 2014**

———————————————

**Finkle, U.S. Bankruptcy Appellate Panel Judge.**

Puerto Rico Electric Power Authority ("PREPA") appeals from a bankruptcy court order denying its motion for payment of administrative expenses under Bankruptcy Code § 503(b)(9)[1] (the "Expense Motion"), as well as a subsequent order denying its motion for reconsideration (the "Reconsideration Motion"). For the reasons discussed below, we **VACATE** the order denying the Expense Motion and **REMAND** to the bankruptcy court for further proceedings consistent with this opinion. For the reasons discussed *infra,* the appeal of the order denying the Reconsideration Motion is waived.

## BACKGROUND

PMC Marketing Corp. ("PMC") filed a voluntary petition for chapter 11 relief on March 18, 2009. The bankruptcy court converted PMC's case to chapter 7 and appointed Noreen Wiscovitch Rentas as the chapter 7 trustee (the "Trustee") in May 2010.

In April 2013, PREPA filed the Expense Motion, seeking administrative expense priority under § 503(b)(9) in the amount of $89,336.42, representing the value of its claim for electricity supplied to PMC during the twenty-day period preceding the petition date. In support, PREPA alleged that: (1) it supplied the electricity during PMC's ordinary course of business, as required for priority treatment as an administrative expense under § 503(b)(9); and (2) because electricity

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

2

Case: 13-90 Document: 13 Page: 3 Date Filed: 09/23/2014 Entry ID: 2176606

satisfies the Uniform Commercial Code (the "UCC") definition of a "good," it also qualifies as a good for purposes of § 503(b)(9).[2]

In opposition to the Expense Motion, the Trustee did not address the issue of whether electricity is a service or a good.   Instead, she urged the court to disallow the Motion as a "disguised" and "extremely belated" proof of claim.   In its reply, PREPA challenged the Trustee's characterization of the Expense Motion, maintaining that neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure prescribe a time limitation for the filing of administrative expense claims.

Without a hearing, the court denied the Expense Motion in its Opinion and Order dated September 4, 2013.   See In re PMC Mktg., Corp., 501 B.R. 17 (Bankr. D.P.R. 2013).   At the outset, the court readily dispatched the Trustee's timeliness challenge, noting among other things, that the docket revealed PREPA had timely filed a proof of claim covering the amounts for which it sought administrative expense priority.   The court concluded that there was no dispute that PREPA provided electricity to PMC within the twenty-day period preceding the bankruptcy filing and that PMC purchased that electricity in the ordinary course of its business. The only issue that remained was whether the electricity provided by PREPA was a "good" or a "service."

In ruling that PREPA's provision of electricity to PMC was a service, and therefore outside the scope of § 503(b)(9), the bankruptcy court determined that it was necessary to

---

[2]   UCC § 2-105(1) defines "goods," in relevant part, as "all things . . . which are movable at the time of identification to the contract for sale" except "money in which the price is to be paid, investment securities (Article 8) and things in action."   UCC § 2-105(1).   The Official Comment to UCC § 2-105 explains that "[t]he definition of goods is based on the concept of movability and the term 'chattels personal' is not used.   It is not intended to deal with things which are not fairly identifiable as movables before the contract is performed."

3

consider the totality of the circumstances. The dominant focus of its analysis was PREPA's

domination of the electricity supply in Puerto Rico and its status as a regulated public utility.

The bankruptcy court found this factor crucial, contrasting PREPA with the electricity provider

in In re Erving Indus., Inc., 432 B.R. 354 (Bankr. D. Mass. 2010), where that court concluded

electricity was a "good" rather than a "service." The bankruptcy court elaborated:

> In this instant case, PREPA plays a different role than the alternative energy
> provider in Erving. Contrary to PREPA, the alternative energy provider in
> Erving is exactly that, an [*alternativ*e] energy provider, in which the consumer
> can elect such alternative energy from a private corporation. This Court takes
> judicial notice of PREPA's webpage. [Under the] "PREPA is" tab, PREPA
> provided the following description in relevant part:
>
>> The Puerto Rico Electric Power Authority (PREPA) is a ***public
>> corporation*** that was founded in 1941. Our Mission is to provide
>> electric energy services to customers in the most efficient, cost-
>> effective and reliable manner in harmony with the environment.
>> Our Vision is to ensure that PREPA's operations are competitive to
>> similar corporations around the world. ***PREPA produces,
>> transmits and distributes, practically, all the electric power used
>> in Puerto Rico.*** It is one of the major public electric power
>> corporations in the United States. ***PREPA is directed by a
>> Government Board, comprised of nine members. Seven of its
>> members are appointed by the Governor of Puerto Rico with the
>> approval of the Senate.*** (emphasis added)
>
> As seen above, PREPA is a government agency, seeking to provide utilities to the
> residents of Puerto Rico. Both the House Judiciary Report and the Senate Report
> on the provision provide in relevant part:
>
>> [Section 366] gives debtors protection from a cut-off of service by
>> a utility because of the filing of a bankruptcy case. This section is
>> intended to cover utilities that have some special position with
>> respect to the debtor, such as an electric company, gas supplier, or
>> telephone company that is a monopoly in the area so that the

4

Case: 13-90 Document: 13 Page: 5 Date Filed: 09/23/2014 Entry ID: 2176600

> debtor cannot easily obtain comparable service from another
> utility.

In re PMC Mktg. Corp., 501 B.R. at 23-24 (footnote and citation omitted) (alterations added).

The bankruptcy court then turned to the meaning of "utility," observing that while that term is not defined in the Bankruptcy Code, its ordinary meaning is "'a service (such as light, power, or water) provided by a public utility.'" Id. at 24 (quoting Merriam-Webster's Collegiate Dictionary (10th ed. 2001)). Citing One Stop Realtour Place, Inc. v. Allegiance Telecom, Inc. (In re One Stop Realtour Place, Inc.), 268 B.R. 430, 435 (Bankr. E.D. Pa. 2001), the bankruptcy court further observed that some courts have concluded that the term "utility" refers to a "business organization (as an electric company) performing a public service and subject to special governmental regulations, that has some special position with respect to the debtor, and has a monopoly in the area so that the debtor cannot easily obtain comparable service from another." 501 B.R. at 24 (internal quotations and citation omitted). PREPA, the bankruptcy court found, qualified as a "utility provider" because:

> (1) [I]t is subject to governmental regulation as are traditional utilities; (2) PREPA does fit the ordinary definition of a utility as it does enjoy a "special relationship" with the Debtor (PREPA is the sole provider of electricity in Puerto Rico) and it does have a monopoly; and (3) PREPA is a government owned corporation of Puerto Rico.

Id. The bankruptcy court ruled that as a regulated utility provider, PREPA provided a "service" rather than a "good" to PMC and, therefore, was not entitled to payment of prepetition priority expenses pursuant to § 503(b)(9). Id.

On September 5, 2013, PREPA filed the Reconsideration Motion pursuant to Fed. R. Bank. P. 9023, contending that the court committed an error of fact when it concluded that PREPA has a state-granted monopoly over the sale of electricity in Puerto Rico, and an error of

law when it ruled that § 503(b)(9) does not apply to the electricity sold by PREPA to its customers because of that monopoly.

The Trustee opposed reconsideration, arguing "there can be no doubt that PREPA is a 'utility,'" as "almost every person and/or entity in Puerto Rico has to purchase electricity from PREPA." The bankruptcy court denied the Reconsideration Motion in its Opinion and Order dated October 1, 2013, on the grounds that PREPA had failed to present newly discovered evidence or any intervening change in the law. This appeal followed.

## POSITIONS OF THE PARTIES

The sole issue on appeal is whether the bankruptcy court erred in concluding that the electricity PREPA supplied to PMC within the twenty days of the petition date is a "service" rather than a "good" entitled to receive priority treatment as an administrative expense under § 503(b)(9). Although PREPA identified in its notice of appeal the order denying reconsideration as one of the matters on appeal, it waived that aspect of the appeal by failing to discuss this order in its statement of issues and brief. See Eakin v. Goffe, Inc. (In re 110 Beaver St. P'ship), 355 Fed. App'x 432, 436-37 (1st Cir. 2009).

PREPA urges the Panel to follow Erving, *supra*, where the court determined that electricity satisfies the UCC definition of a "good" and therefore constitutes a "good" for purposes of § 503(b)(9). It contends that the electricity it sold to PMC "is just as moveable and just as identifiable when it passe[d] through the meter as was the electricity supplied by the electricity provider in" Erving. Challenging the bankruptcy court's "public utility" analysis and its emphasis on the relationship between the provider and its customer, PREPA further argues:

> Electricity is electricity regardless of who sells it. Its nature and physical
> properties do not change depending on who is the seller. Either electricity is

6

always a "good" or is always a "service" for purposes of the UCC and section 503(b)(9).  Simply put, electricity does not cease to fall under the definition of "goods" of the UCC just because the seller happens to be a public utility.

Citing the principle that Bankruptcy Code provisions governing claims priority are to be "narrowly construed," see Travelers Prop. Cas. Corp. v. Birmingham-Nashville Express, Inc. (In re Birmingham-Nashville Express, Inc.), 224 F.3d 511, 517 (6th Cir. 2000), the Trustee counters that Puerto Rico did not adopt § 2-105(1) of the UCC and that PREPA has "failed to otherwise explain how electricity is a good under Puerto Rico law."  The Trustee argues alternatively that electricity does not satisfy the UCC definition of a "good."  Relying on In re NE Opco, Inc., 501 B.R. 233 (Bankr. D. Del. 2013), the Trustee asserts that for something to be a "good," the purchaser must be able to separate and move or return the "good."  Applying this test to electricity, she contends:

> Once electricity has been 'identified' by measurement at the meter, it has already been consumed by the end user.  It is impossible for the consumer to return electricity to the provider after it has passed the meter point.  The mere fact that electricity is sold in metered quantities does not bring it within UCC § 2-105 or Code § 503(b)(9).

(citation omitted).  Accordingly, she maintains that PREPA's claim is not entitled to priority treatment under this provision of the Bankruptcy Code.

## JURISDICTION

A bankruptcy appellate panel is "'duty-bound'" to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants.  Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724, 725-26 (B.A.P. 1st Cir. 1998) (quoting Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (B.A.P. 1st Cir. 1998)).  A panel may hear appeals from "final judgments, orders,

7

and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." In re Bank of New England Corp., 218 B.R. at 645. The bankruptcy court's determination that PREPA's claim is not entitled to administrative priority under § 503(b)(9) is a final order. In re Saco Local Dev. Corp., 711 F.2d 441, 445-46 (1st Cir. 1983) (stating a final judgment includes an order that conclusively determines a dispute over the priority of a creditor's claim); see also Polsky v. Renew Energy, LLC, No. 09-cv-701-bbc, 2010 WL 842317, at *4 (W.D. Wis. Mar. 5, 2010) ("There is no question that the disallowance of [the creditor's] § 503(b)(9) claim is a final order.").

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo.* See Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 592 F.3d 267, 269 (1st Cir. 2010). This appeal involves a question of statutory interpretation; accordingly, the Panel's review is *de novo.* See Boston & Me. Corp. v. Mass. Bay Transp. Auth., 587 F.3d 89, 98 (1st Cir. 2009) (citation omitted); Larson v. Howell (In re Larson), 513 F.3d 325, 328 (1st Cir. 2008) (citations omitted).

## DISCUSSION

I.      **The Standard Under § 503(b)(9)**

Enacted as part of BAPCPA, § 503(b)(9) "creates a priority administrative expense claim for the value of goods received by a debtor in the ordinary course of business during the 20 days

Case: 13-90 Document: 13 Page: 9 Date Filed: 09/23/2014 Entry ID: 2176606

prior to the bankruptcy filing." In re Erving Indus., Inc., 432 B.R. at 361 (footnote and citation

omitted). The statute provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses . . . ,
> including-
>
> \*   \*   \*
>
> (9) the value of any goods received by the debtor within 20 days before the date
> of commencement of a case under this title in which the goods have been sold to
> the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9).

"'The language of the statute provides for the allowance of an administrative claim

provided the claimant establishes: (1) the vendor sold 'goods' to the debtor; (2) the goods were

received by the debtor within twenty days prior to filing; and (3) the goods were sold to the

debtor in the ordinary course of business.'" In re NE Opco, Inc., 501 B.R. at 240-41 (quoting In

re Goody's Family Clothing, Inc., 401 B.R. 131, 133 (Bankr. D. Del. 2009)). An administrative

expense claimant bears the burden of establishing that its claim qualifies for priority status. In

re Goody's Family Clothing, Inc., 401 B.R. at 136 n.24 (internal quotations and citation omitted).

## II. What is a "Good"?

It is well-settled that the statute does not provide priority status to claims for services

rendered; it refers only to "the value of . . . *goods*." In re Erving Indus., Inc., 432 B.R. at 361

(quoting 11 U.S.C. § 503(b)(9)); see also In re NE Opco, Inc., 501 B.R. at 241 ("An

administrative priority claim under [§] 503(b)(9) is limited to the provision of goods"). Beyond

that, however, the Bankruptcy Code does not define the term "goods," and the First Circuit has
not addressed the issue.

In the absence of a Code definition, nearly every court to consider the issue, other than
the bankruptcy court in this case, has concluded that the meaning of "goods" under § 503(b)(9)
"is primarily informed by the meaning of *goods* under Article 2 of the UCC." In re Erving
Indus., Inc., 432 B.R. at 365; see also In re NE Opco, Inc., 501 B.R. at 260; Hudson Energy
Servs., LLC v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.), 498 B.R. 19, 25-26
(S.D.N.Y. 2013); GFI Wis., Inc. v. Reedsburg Util. Comm'n, 440 B.R. 791, 798 (W.D. Wis.
2010); In re Circuit City Stores, Inc., 416 B.R. 531, 535-36 (Bankr. E.D. Va. 2009); In re
Goody's Family Clothing, Inc., 401 B.R. at 134-36; In re Pilgrim's Pride Corp., 421 B.R. 231,
237 (Bankr. N.D. Tex. 2009); In re Plastech Engineered Prods., Inc., 397 B.R. 828, 836 (Bankr.
E.D. Mich. 2008); see also In re Samaritan Alliance, LLC, No. 07-50735, 2008 WL 2520107, at
*3 (Bankr. E.D. Ky. June 20, 2008).[3]

As justification, one bankruptcy court within this circuit reasoned that "[g]iven the wide
usage and acceptance of the definition of *goods* found in the UCC at § 2-105(1), it is hardly
plausible that Congress expected bankruptcy judges to roll up their sleeves and set to work re-
inventing the proverbial wheel and divining a more amorphous 'common understanding' of the
term." In re Erving Indus., Inc. , 432 B.R. at 365. Some courts have also reasoned that the
UCC definition is consistent with the expectations of the marketplace, GFI Wis., Inc., 440 B.R.
at 798, In re Circuit City Stores, Inc., 416 B.R. at 536 n.7, and In re Goody's Family Clothing,

---

[3]    Ironically, near uniformity has not flowed from this widespread application of the UCC
definition of a "good" to § 503(b)(9). Cf. GFI Wis., Inc., 440 B.R. at 802; In re Erving Indus., Inc., 432
B.R. at 370 (electricity is a "good"), with In re NE Opco, Inc., 501 B.R. at 260; In re Pilgrim's Pride
Corp., 421 B.R. at 240.

Case:19-30 Document:19 Page: 11 Date Filed: 09/23/2014 Entry ID: 21763000

Inc., 401 B.R. at 134, while another emphasized the necessity of a uniform definition to ensure similarly situated claims receive the same treatment.   In re Pilgrim's Pride Corp., 421 B.R. at 236-37.

The fundamental problem in the instant case is that the bankruptcy court did not conduct its analysis utilizing a particular definition of the term "good" which the court deemed appropriate for purposes of its determination.   While it acknowledged that the Erving court used UCC § 2-105(1) to reach its conclusion that electricity is a "good" for purposes of § 503(b)(9), it never considered the merits of that approach one way or another, and merely noted that many courts disagree with Erving's holding that electricity is a "good" rather than a "service." Instead, the bankruptcy court adopted a case-by-case inquiry into "the totality of the circumstances of all relevant facts," which seemingly focused on facts distinguishing PREPA from the electric provider in Erving.   Indeed, the only part of the Erving decision that the bankruptcy court emphasized was the electric provider's argument that it was not a utility because its "service" was different from those traditional functions commonly associated with electric utilities and it lacked a monopoly or exclusive service area regulated by the government.

This approach was inherently flawed because rather than considering whether electricity is a "good," the question squarely before the bankruptcy court, it first determined that PREPA is a utility and then focused on whether a utility provides services rather than a "good."   The bankruptcy court ultimately found that the relationship between PMC and PREPA was clearly one between a customer and a regulated utility and, given PREPA's nature as a "traditional utility" provider with a monopoly in the provision of electricity to its customers, PREPA provided a "service" rather than a "good."   In doing so, it erroneously rejected the idea that

11

electricity is, in and of itself, either a "good" or a "service." Moreover, the bankruptcy court mistakenly relied on several observations to inform its decision.

First, the bankruptcy court gave inappropriate evidentiary weight to PREPA's characterization of itself as a service provider on its own website. PREPA's website is merely a self-serving marketing tool and of no moment. Furthermore, "[t]hat a company provides services does not bar it from selling goods that qualify for administrative priority under § 503(b)(9)." GFI Wis., Inc., 440 B.R. at 801-802.

Next, having concluded from PREPA's website that it is "a government agency, seeking to provide utilities to the residents of Puerto Rico," the bankruptcy court considered the legislative history of § 366,[4] noting Congress' recognition that utilities hold a special position or monopolistic relationship with respect to a debtor. It then looked to the ordinary meaning of "utility" and "public utility," generally defining it as an entity providing a "service," such as power or water, to the public and having a special relationship with the government and the consumer. The bankruptcy court's reliance on these considerations is problematic.

Courts have uniformly rejected the relevance of § 366 to the § 509(b)(9) "goods" versus "services" determination. See, e.g., GFI Wis., Inc., 440 B.R. at 801; In re NE Opco, Inc., 501 B.R. at 244; In re Erving Indus., Inc., 432 B.R. at 363-4; In re Pilgrim's Pride Corp., 421 B.R. at 241; In re Plastech Engineered Prods., Inc., 397 B.R. at 839. The purpose of § 366 is "to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid." Jones v. Boston Gas Co. (In re

---

[4] Section 366 provides, in pertinent part, that "a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due." 11 U.S.C. § 366(a).

Jones), 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) (citation and internal quotations omitted). As aptly stated by the district court in GFI Wisconsin., Inc., "[j]ust because a seller of goods may also be a utility that is entitled to the protection of § 366 . . . does not mean it is prohibited from allowance of a § 503(b)(9) administrative expense claim . . . ." 440 B.R. at 801; accord In re NE Opco, Inc., 501 B.R. at 255 (noting "there are things such as natural gas that are specifically identified in the [UCC] as goods but which are services under [§] 366"); In re Erving Indus., Inc., 432 B.R. at 364 n.15 (concluding that even if the court were to determine that the claimant is a utility, that characterization would not foreclose a claim under § 503(b)(9)); In re Plastech Engineered Prods., Inc., 397 B.R. at 839 (concluding that natural gas is a "good" recoverable under § 503(b)(9), regardless of whether creditor was entitled to protections under § 366); In re Pilgrim's Pride Corp., 421 B.R. at 241 (holding that nothing in § 366 forecloses gas providers from asserting priority claim under § 503(b)(9)).

More troubling, however, is that the bankruptcy court's focus on the definition of a "utility" led it to place undue weight on the monopolistic relationship between PMC and PREPA. In rejecting such emphasis on the parties' relationship, one court observed:

> If one makes the good/service determination based on the parties' relationship, then the electric current could travel from origination to use, starting as a good and ending as a service. Indeed, since [§] 366 is unique to the Bankruptcy Code, whether the wholesaler providing electricity to the consumer is delivering a good or a service might depend on whether the consumer is in bankruptcy. The problems with this approach are self evident. The proper course is to determine whether electricity, in and of itself, is a good.

In re NE Opco, Inc., 501 B.R. at 255-6. Moreover, focusing on the relationship of the parties could potentially yield unpredictable and inconsistent results depending on the nature of the claimant rather than the substance of the product provided to a debtor. We conclude that the

13

bankruptcy court's reliance on § 366 and its legislative history was misplaced. Ultimately, we are persuaded by the vast weight of authority that a proper analysis of whether electricity constitutes a "good" for purposes of § 503(b)(9) administrative priority must begin with an analysis of the term "good" itself. Thus, we conclude that the bankruptcy court applied the incorrect legal standard and the case must be remanded for a proper analysis focusing on the definition of the term "good," and then applying that definition to the facts at hand.[5] Because the bankruptcy court has not yet considered the merits of any definition of a "good" for purposes of § 503(b)(9), we need not opine at this time on whether electricity is a "good" or a "service" entitled to administrative expense priority.

**CONCLUSION**

In light of the foregoing, we **VACATE** the bankruptcy court's order denying the Expense Motion, and **REMAND** to the bankruptcy court for further proceedings consistent with this opinion.

---

[5] As previously indicated, most courts to consider the issue have adopted the definition of "goods" contained within UCC § 2-105(1). The Trustee, however, notes that Puerto Rico has not enacted the UCC or the definition of a "good" as provided by UCC § 2-105(1). PREPA, on the other hand, asserts that the Supreme Court of Puerto Rico has already ruled that electricity is a "good" in Pueblo v. Uriel Alvarez, 112 D.P.R. 312, 12 P.R. Offic. Trans. 388 (1982) (observing in dicta that electricity is "property" that may be the subject of unlawful appropriation under the Penal Code of Puerto Rico); see also Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp., 163 F.3d 153, 155 (2d Cir. 1998) (a pre-BAPCA case in which the district court for the Southern District of New York held that "the UCC does not apply to [the] sale of electricity which is a service under New York law."). Consideration of these issues is appropriately left to the bankruptcy court in the first instance.

**Hoffman, U.S. Bankruptcy Appellate Panel Judge, Concurring**.

While I agree that this matter should be remanded to the bankruptcy court to determine whether and to what extent PREPA supplied goods or something other than goods to PMC, I believe it is incumbent upon us as de novo reviewers of issues of law to instruct the bankruptcy court as to the proper legal standard to apply to its fact finding enterprise. As to issues of law, "[u]nder the de novo standard of review, 'we consider a matter anew, as if no decision had been rendered previously.'" Calderon v. Lang (In re Calderon) 507 B.R. 724, 728 (B.A.P. 9th Cir. 2014) (quoting Mele v. Mele (In re Mele), 501 B.R. 357, 362 (B.A.P. 9th Cir. 2013)).

The issue of law that is squarely before us is what is the meaning of the word "goods" as used in § 503(b)(9) of the Bankruptcy Code. Since the Code lacks a definition we must fashion one. That definition ought not to be susceptible to variations in application by state or territory. The Bankruptcy Code is federal law. See, e.g., Gallivan v. Springfield Post Rd. Corp., 110 F.3d 848, 851 (1st Cir. 1997) ("Its [§ 503(b)] requirements are to be assessed under federal law."); In re Erving Indus., Inc., 432 B.R. at 366 n.23 ("The Court remains mindful, however, that § 503(b)(9) is federal law. As such, the definition of goods is also [a] matter of federal, and not state, interpretation."); In re Pruitt, 401 B.R. 546, 555 (Bankr. D. Conn. 2009) ("Specifically, the ultimate amount, character and class of a creditor's claim *for purposes of treatment in the bankruptcy case* is determined *solely* by the rules and principles of the federal bankruptcy law."). One of the Bankruptcy Code's guiding principles is uniformity, especially when it comes to the treatment of creditor claims. See, e.g., Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 377 n.13 (2006) ("Congress has the power to enact bankruptcy laws the purpose and effect of which are to ensure uniformity in treatment of state and private creditors."); In re Pilgrim's Pride Corp., 421

15

B.R. at 236 ("One of the cardinal rules of bankruptcy law is that similarly situated claims should receive the same treatment."). For this reason the decision of the Supreme Court of Puerto Rico in Pueblo v. Uriel Alvarez, *supra*, commended to us by counsel for PREPA, offers no assistance.

The majority notes that in defining the term "goods" in § 503(b)(9) most courts have adopted the definition of goods contained in § 2-105(1) of the Uniform Commercial Code. Indeed, one district court has noted that "[e]very bankruptcy court to consider the issue . . . has applied the Uniform Commercial Code definition." GFI Wis., Inc., 440 B.R. at 797. I see no reason to swim against the current.[6] As the court in Erving observed: "Given the wide usage and acceptance of the definition of *goods* found in the UCC at § 2-105(1), it is hardly plausible that Congress expected bankruptcy judges to roll up their sleeves and set to work re-inventing the proverbial wheel and divining a more amorphous 'common understanding' of the term." 432 B.R. at 365. This approach also fosters uniformity. Like the bankruptcy court in Circuit City, I do "not believe that Congress intended a disparate application of the term 'goods,' but rather contemplated a consistent, uniform approach to its interpretation." 416 B.R. at 535.

---

[6] The fact that Puerto Rico has not adopted the UCC is irrelevant. As stated in Erving:

> Although the [c]ourt has not identified any state laws which deviate from the definition of *goods* found in § 2-105 . . . , the [c]ourt agrees with the court's conclusion in Pilgrim's Pride that "the appropriate definition of goods for the purpose of Code § 503(b)(9) is that found in the 'model' UCC," 421 B.R. at 236-37, and not any particular permutation adopted by an individual state. Of course, decisions interpreting the meaning of g*oods* under § 2-105 will provide bankruptcy courts with a wealth of persuasive and insightful guidance. But to the extent that differences arise from "local enactments of the UCC or the variances in its interpretation by the courts of the states," the [c]ourt agrees that federal bankruptcy courts should be reluctant to give those variances effect under federal law." Id.

432 B.R. at 366 n.23.

I would remand this case to the bankruptcy court with instructions to determine on the

facts of the case whether PREPA's § 503(b)(9) request for payment of administrative expense is

allowable and to apply the definition of goods in accordance with § 2-105(1) of the model UCC.